NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1481

SCANTIBODIES LABORATORY, INC.,

Plaintiff-Appellant,

v.

IMMUTOPICS, INC. and IMMUTOPICS INTERNATIONAL, LLC,

Defendants-Appellees.

E. Anthony Figg, Rothwell, Figg, Ernst & Manbeck, P.C., of Washington, DC, argued for plaintiff-appellant. With him on the brief was Nancy J. Linck. Of counsel on the brief were Rod S. Berman and Brian W. Kasell, Jeffer, Mangels, Butler & Marmaro, LLP, of Los Angeles, California.

Matthew A. Newboles, Stetina Brunda Garred & Brucker, of Aliso Viejo, California, argued for defendants-appellees. With him on the brief was Benjamin N. Diederich. Of counsel were William J. Brucker; and Irene C. Keyse-Walker, Tucker, Ellis & West LLP, of Cleveland, Ohio.

Appealed from: United States District Court for the Central District of California

Senior Judge Mariana R. Pfaelzer

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-1481

SCANTIBODIES LABORATORY, INC.,

Plaintiff-Appellant,

v.

IMMUTOPICS, INC. and IMMUTOPICS INTERNATIONAL, LLC,

Defendants-Appellees.

Appeal from the United States District Court for the Central District of California in case no. 04-CV-8871, Judge Mariana R. Pfaelzer.

_____

DECIDED:  May 6, 2010

_____

Before MICHEL, Chief Judge, PLAGER and MOORE, Circuit Judges.

MICHEL, Chief Judge.

Scantibodies Laboratory, Inc. ("Scantibodies") appeals a decision of the United States District Court for the Central District of California entering summary judgment of noninfringement in favor of Immutopics, Inc. and Immutopics International, LLC ("Immutopics").  We affirm for the reasons below.

## BACKGROUND

U.S. Patent No. 6,689,566 ("the '566 patent") issued to Scantibodies on February 10, 2004.  Scantibodies filed its complaint against Immutopics on October 26, 2004.  In November 2007, Immutopics filed a first summary judgment motion for noninfringement.

Prior to ruling on the motion, the district court concluded that construction of claims was required and a one-day Markman hearing took place on March 24, 2008. A claim construction order was subsequently issued on May 1, 2008, and on May 16, 2008, the court issued its first order granting Immutopics' summary judgment motion for noninfringement because the accused antibody did not meet the "specific for" limitation.

On November 24, 2008, the district court declined to certify the partial claim construction for immediate appeal, issued an amended claim construction order, and invited the parties to provide comments. On February 9, 2009, the district court issued a second amended claim construction order. Thereafter, Immutopics again moved for summary judgment of noninfringement, which the district court granted on April 23, 2009, per a revised order. Scantibodies subsequently filed this appeal.

The '566 patent is directed to methods and devices for detecting levels of whole (1-84) PTH in a biological sample. The technology of the '566 patent can differentiate between whole (1-84) PTH and interfering non-(1-84) PTH fragments. This appeal focuses on the construction of claim 5 and the district court's grant of summary judgment of noninfringement of claim 5 and the claims dependent on it. Claim 5 recites:

5. A method for measuring an amount of whole parathyroid hormone in a sample comprising: a) adding to a sample a labeled antibody or antibody fragment specific for an initial peptide sequence of whole parathyroid hormone wherein said initial peptide sequence consists of VAL-SER-GLU-ILE-GLN-LEU-MET (SEQ ID NO: 3), and wherein at least four amino acids in said initial peptide sequence are part of a reactive portion to said labeled antibody; b) allowing said labeled antibody to bind to whole parathyroid hormone present, thereby forming a complex; and c) measuring the amount of said labeled complex to measure the amount of whole parathyroid hormone in said sample while not detecting an interfering non-(1-84) parathyroid hormone fragment.

'566 Patent at col. 9 ll. 34-49 (emphasis added). The district court construed the two underlined terms as follows. First, "not detecting an interfering non-(1-84) parathyroid hormone fragment" was construed by the district court to mean having no detectable binding to an interfering non-(1-84) parathyroid hormone fragment. Scantibodies appeals the district court's construction and the finding of noninfringement based on this construction. Second, "specific for" was defined as "having a measurable affinity for and detectable binding to an epitope having at least four amino acids of the seven in SEQ ID NO. 3. In addition, the affinity is higher than the affinity for any other epitope of the whole PTH sequence." Scantibodies does not appeal the district court's construction of the term "specific for," but disputes the district court's application of the term to Immutopics' antibody.

## DISCUSSION

### A. Standard of Review

We review a district court's claim construction rulings de novo. Cybor Corp. v. FAS Techs., 138 F.3d 1448, 1451 (Fed. Cir. 1998) (en banc). Likewise, we review a district court's grant of summary judgment de novo. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 563 F.3d 1358, 1365 (Fed. Cir. 2009). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c).

### B. Claim Construction

Scantibodies argues that the district court erred by construing the phrase "not detecting an interfering non-(1-84) parathyroid hormone fragment" to mean having no detectable binding to an interfering non-(1-84) parathyroid hormone fragment.

According to Scantibodies, the phrase should instead be construed to mean that the level of detection of such fragments must be below that which would interfere with providing a clinically meaningful assay for whole PTH and that adequately differentiates whole PTH from an interfering non-(1-84) PTH fragment.

We begin our analysis with the plain language of the claim. See Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) ("We have frequently stated that the words of a claim 'are generally given their ordinary and customary meaning.'") (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) (en banc)). Here, the plain meaning of "not detecting" is fully consistent with the district court's construction requiring "no detectable binding." None of Scantibodies' arguments to the contrary are convincing.

First, Scantibodies argues that the district court erred because the complete absence of cross-reactivity is not necessary for a clinical immunoassay to meet the stated goals and purpose of the invention. Scantibodies contends that a person having ordinary skill in the art would not use such an impossibly stringent definition of "not detecting" because such a definition would exclude all antibodies, including its preferred embodiment. However, the district court's definition of "not detecting" was not as strict as Scantibodies alleges. The district court indicated that its construction of "not detecting" was based on its construction of another limitation, "does not specifically bind to an interfering non-(1-84) parathyroid hormone fragment," which Scantibodies does not dispute. The court construed the non-binding limitation to mean having no measurable affinity for and no detectable binding to an interfering non-(1-84) parathyroid hormone fragment, and further explained that no measurable affinity meant

having an association constant of less than 10^5 liter/mole. While this level is less than what is clinically significant, it is not "no binding whatsoever."

Second, Scantibodies argues that its own construction of "not detecting an interfering non-(1-84) parathyroid hormone fragment" is consistent with Scantibodies' clinical use and product literature. One inventor of the '566 patent, Thomas L. Cantor, explained in a declaration that the chemistry of immunoassays is complex and measurements of whole PTH in blood serum are not absolutes because immunoassay science has not evolved to the point where PTH can be determined with absolute precision. Cantor further noted that none of the invention described in the patent, or Scantibodies' whole PTH assays, absolutely detect PTH without any detectable cross-reactivity, but that any such degree of cross-reactivity was not significant. Such detection was described in Scantibodies' product literature as having "no cross-reactivity."

We cannot give Cantor's self-serving testimony much weight because it is, at best, relatively weak extrinsic evidence. The use of language in marketing materials often means something quite different from the language used in a patent. Moreover, the inventors of the '566 patent chose to draft the claims with the narrow term "not detecting" when there were alternatives that were less confining. If the inventors wanted "not detecting" to have a different meaning based on the clinical or marketing context, they could have drafted the claims differently. For example, the inventors could have chosen a term with a broader meaning or have assigned "not detecting" a unique definition different than its ordinary meaning by clearly expressing that intent in the written description. See Phillips, 415 F.3d at 1313. Here, the inventors elected to do

neither. Because of this choice, a competitor reading the '566 patent would not know that "not detecting" means something other than its ordinary meaning and would not be forewarned that it might infringe.

In addition, Scantibodies' claim that no PTH assay can absolutely detect PTH without detectable cross-reactivity is contradicted by the 2001 Gao et al. article that lists among its authors both inventors of the '566 patent. The Gao article disclosed an N-terminal PTH antibody that would only bind to PTH if the first amino acid was present, and further, did not detect fragments of (7-84) PTH at concentrations of 10,000 pg/ml, far beyond any clinically relevant level. The antibody could specifically bind to whole PTH while not specifically binding to the interfering (7-84) PTH fragment, illustrating that it would have been possible to meet the district court's construction using then-existing technology.

Thus, we hold that the district court correctly construed "not detecting an interfering non-(1-84) parathyroid hormone fragment" to mean having no detectable binding to an interfering non-(1-84) parathyroid hormone fragment.

## C. Infringement

Scantibodies effectively concedes that, under the district court's construction, the accused Immutopics antibody does not meet the "not detecting an interfering non-(1-84) parathyroid hormone fragment" limitation. Indeed, there is uncontroverted evidence that Immutopics' accused antibody detectably binds to interfering non-(1-84) PTH fragments. This evidence includes Immutopics' product information materials, Scantibodies' admissions and tests showing binding to interfering non-(1-84) fragments, and published third party data.

Thus, the district court correctly entered summary judgment of noninfringement of claim 5 and its dependent claims because Immutopics' antibody does not meet the "not detecting an interfering non-(1-84) parathyroid hormone fragment" limitation. Since summary judgment of noninfringement may be based on the failure to meet any one claim limitation, we do not need to reach the issue of whether the district court correctly determined that Immutopics' antibody did not meet the "specific for" limitation.

## CONCLUSION

For the reasons stated above, we affirm the district court's entry of summary judgment of noninfringement.

## COSTS

No costs.